

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-10-2004

# Bakhtriger v. Elwood

Precedential or Non-Precedential: Precedential

Docket No. 02-4134P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Bakhtriger v. Elwood" (2004). *2004 Decisions.* Paper 893.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/893

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

No. 02-4134

MICHAEL BAKHTRIGER,
                    Appellant

v.

KENNETH JOHN ELWOOD, ACTING
DISTRICT DIRECTOR OF THE
PHILADELPHIA OFFICE OF THE
IMMIGRATION AND
NATURALIZATION SERVICE;
THEODORE NORDMARK,
ASSISTANT DISTRICT DIRECTOR
FOR
DEPORTATION AND DETENTION;
AND THE IMMIGRATION AND
NATURALIZATION SERVICE

On Appeal from the United States
District Court for the Eastern District of
Pennsylvania
(Dist. Court No. 02-cv-00535)
District Judge: Hon. Herbert J. Hutton

Argued: October 14, 2003

Before: SLOVITER, ROTH and
            CHERTOFF, Circuit Judges

(Filed: March 10, 2004 )

Steven A. Morley, Esq.    (Argued)
Morley, Surin & Griffin
325 Chestnut Street
Suite 1305
Philadelphia, PA 19106

            Counsel for Appellant

Sonya F. Lawrence, Esq.    (Argued)
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

            Counsel for Appellees

OPINION

CHERTOFF, Circuit Judge.

Appellant Michael Bakhtriger, a lawful permanent resident in the United States, was convicted of a felony and subjected to immigration removal proceedings. Bakhtriger challenged the removal proceedings by petition for habeas corpus. The District Court determined that Bakhtriger was essentially seeking review of a discretionary determination of the Immigration and Naturalization Service (INS). The District Court held, however, that there is no jurisdiction under the habeas statute, 28 U.S.C. § 2241, to review

discretionary determinations or factual findings of the INS.

This question of the scope of habeas jurisdiction is one of first impression in this Circuit. We agree with the District Court's reading of the law and we will affirm.

## I.

Bakhtriger entered the United States in February 1993, from the former Soviet Republic of Moldova, his native country. He was granted the protection of the United States as a refugee and became a lawful permanent resident in April 1994. In April 1998, Bakhtriger was convicted of possession of both cocaine base and heroin in the Court of Common Pleas in Montgomery County, Pennsylvania. Less than a year later, in January and February of 1999, Bakhtriger was arrested for violating his probation, and sentenced to 2-12 months imprisonment.

Bakhtriger's controlled substance conviction rendered him removable[1] under 8 U.S.C. § 1227(a)(2)(B)(i), which provides:

---

1 Under recent amendments to the Immigration and Nationality Act, the term "removal" embraces concepts of both "deportation" and "exclusion." See Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, Div. C, § 308, 110 Stat 3009-619. Saying that Bakhtriger was "removable" is equivalent to saying that he was "deportable."

(B) Controlled substances

(i) Conviction

Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is [removable].

8 U.S.C. § 1227(a)(2)(B). The INS initiated removal proceedings against Bakhtriger on April 17, 2000. Before the Immigration Judge (IJ), Bakhtriger did not contest that he was an alien or that he had committed a removable offense. Rather, Bakhtriger applied for asylum and withholding of removal under 8 U.S.C. § 1158, and relief from removal under the Convention Against Torture, 8 U.S.C. § 1231.

Bakhtriger, through his own testimony and that of his mother, attempted to show that he had a reasonable fear of persecution should he return to Moldova. The evidence presented by

2

Bakhtriger focused on his history of past religious persecution as a member of the Jewish faith in Moldova, and his fears of what might befall him if he should return.

Bakhtriger's mother recounted that her husband had been an officer in the Soviet army, but had been hampered in his advancement as a result of his religion. She also explained that Jews in Moldova were prevented from publicly practicing their religion. Both witnesses emphasized that anti-semitism was pervasive under the old Soviet regime, and that the post-Soviet Moldovan government took no action to curb the open hostility emanating from large segments of the public.

Other testimony indicated that, while living in Moldova, Bakhtriger was routinely harassed, called derogatory names, and physically beaten as a result of his religion. According to his mother, Bakhtriger was prevented from attending any prestigious colleges or universities. Instead, he was directed to a trade school to learn television repair. At this school, too, Bakhtriger was beaten by fellow students. Later, mirroring the experience of his father, Bakhtriger lost two successive jobs in factories as a result of his religion.

Both Bakhtriger and his mother recounted that anti-semitic signs and graffiti regularly marred fences and buildings. In the spring of 1992, the door of the apartment in which the Bakhtrigers lived was etched with a Star of David, something the Bakhtrigers took as a threat—that anti-semitic elements were "marking" the apartment as one in which Jews lived. Bakhtriger recounted that during a recent trip back to Moldova he was attacked in public and a necklace bearing the Star of David was ripped from his neck.

The IJ credited the testimony of both witnesses and found that Bakhtriger had suffered past persecution. But the IJ found that the INS had presented sufficient proof of "changed country conditions" in Moldova to rebut the presumption that Bakhtriger had a well-founded fear of persecution. Even so, the IJ exercised his discretion to grant asylum where the applicant has "demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution." 8 CFR § 208.13(b)(1)(iii)(A).

The INS appealed the IJ's decision to the Board of Immigration Appeals (BIA). The BIA deferred to the IJ's determination that Bakhtriger and his mother were credible witnesses, and accepted the IJ's summary of the evidence. However, the BIA overturned the IJ's grant of asylum and ordered that Bakhtriger be removed to Moldova. The BIA decided that even if the IJ accurately described the level of persecution, Bakhtriger's experience did not rise to the level found in previous cases where the Board determined to exercise its authority to grant asylum for compelling reasons.

Bakhtriger filed a petition for a writ of habeas corpus in the Eastern District of Pennsylvania. Before the District Court,

Bakhtriger did not claim a denial of a constitutional right or an error in application of the statutory standards. Rather, he argued that the factual record did not support the finding by both the IJ and the BIA that there was no well-founded fear of future persecution because conditions in Moldova have changed. As he put it, "the IJ and BIA ignored evidence in the record of centuries of anti-semitism and persecution of Jews." J.A. 7.

Bakhtriger also urged that even if there was no well-founded fear of persecution, the BIA wrongly reversed what was concededly the IJ's "broadly define[d]" discretion to grant asylum based on past persecution. J.A. 20. Again, in the habeas petition's own words, Bakhtriger contended that the BIA wrongly determined that he "was not entitled to asylum on a discretionary basis." J.A. 7.

Based on the petition, the District Court reasoned that Bakhtriger sought review of a discretionary determination, and therefore dismissed the petition for want of subject matter jurisdiction. The District Court noted that habeas review of criminal alien removal proceedings falls under the general habeas statute, 28 U.S.C. § 2241. The District Court held, however, that the scope of review of immigration proceedings under section 2241 is limited to constitutional claims or errors of law. The District Court reasoned that factual and discretionary determinations are not cognizable under section 2241, and the federal courts therefore lack jurisdiction to entertain such claims in habeas challenges to removal proceedings.

This timely appeal followed.

A district court's determination that it lacks subject matter jurisdiction is a determination of law over which we exercise plenary review. See Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Moreover, we exercise plenary review where a district court dismisses a habeas corpus petition based on a legal conclusion without holding an evidentiary hearing. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 (3d Cir. 1991).

## II.

In 1996, Congress overhauled the Immigration and Nationality Act (INA), see 8 U.S.C. § 1101 et seq., by enacting two statutes in rapid succession, the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub L. No. 104-132, 110 Stat. 1214, and the Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546. Under the amended INA, asylum remains a discretionary determination on the part of the INS. But AEDPA and IIRIRA enacted two changes curtailing court review of removal proceedings.[2] To understand these

_____

2 In addition to imposing a new set of permanent rules, IIRIRA provided for a set of "transitional" rules. All removal cases commenced before April 1, 1997, in which a final order of deportation was filed after October 30, 1996 are subject to the transitional rules. See Illegal Immigrant Reform and Immigrant

changes, we must briefly review the development of judicial review of immigration determinations.

Until 1952, judicial jurisdiction to review executive decisions relating to immigration was founded exclusively on the writ of habeas corpus. See United States v. Jung Ah Lung, 124 U.S. 621 (1888). During that period, "habeas corpus was the only remedy by which deportation orders could be challenged in the courts." Heikkila v. Barber, 345 U.S. 229, 230 (1953). A challenge to the exclusivity of the habeas remedy was briefly mounted after the 1946 passage of the Administrative Procedure Act (APA), which overhauled administrative law. Some aliens sought to appeal executive immigration decisions under the APA's general mandate that courts set aside any administrative agency action that was an abuse of discretion or unsupported by substantial evidence. The Supreme Court held the APA inapplicable, however, reasoning that the then-existing specific immigration statute was meant to preclude judicial review of immigration decisions

"except insofar as it was required by the Constitution." Heikkila, 345 U.S. at 235.

In 1952, while the Heikkila case was pending, Congress reconfigured the immigration laws. Heikkila itself declined to rule on the amended act, 345 U.S. at 232 n.4, but the Supreme Court soon had the opportunity to address the new law. In Shaughnessy v. Pedreiro, the Court held that the amended INA was subject to the APA's expanded review because the 1952 revisions, passed after the APA became effective, did not "expressly" supersede or modify the expanded right of review granted by the APA. 349 U.S. 48, 51-52 (1955).

In 1961, Congress changed the immigration statutes again. Under the 1961 amendments, aliens facing deportation were funneled into the courts of appeals for direct review under a standard similar to the APA standard. See 8 U.S.C. § 1105a(a) (1994); see also H.R. Rep. No. 87-1086 (1961), reprinted in 1961 U.S.C.C.A.N. 2950, 2967-76. Aliens subject to exclusion were not provided a means of direct review. See H.R. Rep. No. 87-1086 (1961), reprinted in 1961 U.S.C.C.A.N. 2950, 2967-76. The 1961 amendments, however, clarified that all aliens, whether facing deportation or subject to exclusion, were entitled to review by habeas corpus. See id.; see also 8 U.S.C. §§ 1105a(a)(10) & 1105a(b) (1994).[3] It is unclear—though irrelevant

---

Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, § 309, 110 Stat. 3009-625. All cases commenced after April 1, 1997 are subject to the permanent rules. See Illegal Immigrant Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, § 306(c), 110 Stat. 3009-612. Because Bakhtriger's removal proceedings were commenced on April 17, 2000, we will restrict our discussion to the permanent rules.

---

3   Section 1105a(a)(10) was originally codified as section 1105a(a)(9).

5

to our analysis—whether the provision for habeas corpus review contained in new INA sections 1105a(a)(10) and 1105a(b) actually created independent bases for habeas corpus jurisdiction or merely reserved the availability of habeas corpus pursuant to 28 U.S.C. § 2241. See INS v. St. Cyr, 533 U.S. 289, 310 (2001).

In 1996, Congress enacted AEDPA and IIRIRA to reorder and curtail court review of deportation and exclusion decisions. AEDPA repealed the immigration habeas provision contained in 8 U.S.C. § 1105a(a) and IIRIRA eliminated the remainder of 8 U.S.C. § 1105a. See AEDPA § 401(e), 110 Stat. 1268; IIRIRA § 306(b), 110 Stat. 3009-612. IIRIRA also consolidated judicial review in the courts of appeals under a so-called "zipper clause," which stated that "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien" must take place in the courts of appeals. 8 U.S.C. § 1252(b)(9); see also 8 U.S.C. § 1252(a). In sum, these provisions appeared to consolidate all appeals of INS determinations in a single action, brought only from a final order of removal, and brought only in the courts of appeals. See 8 U.S.C. §§ 1252(a)(1) and (b)(9).

In addition to seeking to "zipper" jurisdiction to review in the courts of appeals, AEDPA and IIRIRA excluded certain categories of INS decisionmaking from this appellate judicial review altogether. See 8 U.S.C. § 1252(a)(2)(C). Among the determinations deemed unreviewable were so-called "criminal alien removal cases"—final orders of removal where the alien was removable for having committed controlled substance offenses, aggravated felonies, certain firearm offenses, miscellaneous national security or defense-related crimes, or for having multiple convictions for crimes involving moral turpitude. See 8 U.S.C. § 1252(a)(2)(C); see also Patel v. Ashcroft, 294 F.3d 465, 468 & n.3 (3d Cir. 2002).[4]

---

See Immigration Act of 1990, § 545(b)(2), Pub. L. No. 101-649, 104 Stat. 4978; H.R. Rep. 87-1086 (1961), reprinted in 1961 U.S.C.C.A.N. 2950, 2967-76.

---

4 At first blush, a separate provision of the amended INA might suggest that direct court of appeals review of asylum determinations in criminal alien removal cases remains available notwithstanding the zipper. In addition to eliminating direct review of criminal alien removal orders in section 1252(a)(2)(C), the amended INA also provides that "*notwithstanding any other provision of law*, . . . (ii) no court shall have jurisdiction to review . . . any other decision or action of the Attorney General the authority for which is . . . in the discretion of the Attorney General, *other than the granting of relief under 8 U.S.C. § 1158(a) [asylum] of this title*." 8 U.S.C. § 1252(a)(2)(B) (emphasis added). One possible reading of section 1252(a)(2)(B) is that courts retain jurisdiction to review

6

In cases where the basis for removal is the commission of the crimes enumerated in section 1252 the net effect of the 1996 immigration law amendment was to eliminate direct review by the courts of appeals of the BIA's determination. We so held in Liang v. INS. 206 F.3d 308, 323 (3d Cir. 2000).[5]

But that shifted the issue of reviewability back to the district courts. The question arose whether in criminal alien removal cases, the preclusion of direct review, coupled with the zipper clause, eliminated all court review, including collateral review under the original habeas corpus provision contained in section 2241.

In Liang, we held that collateral habeas review under section 2241 survived the zipper in criminal alien removal cases. Id. at 323. The Supreme Court confronted this issue in St. Cyr. 533 U.S. at 292. There, the Court definitively agreed that habeas review of criminal alien removal cases under section 2241 was not foreclosed by AEDPA or IIRIRA. Id. at 314. Endorsing the approach we took in Liang and earlier decisions, St. Cyr held that, absent a crystal clear repeal of jurisdiction to consider habeas claims by aliens, the provisions of AEDPA and IIRIRA that preclude judicial review would not be interpreted to repeal section 2241 jurisdiction. Id. At least part of the reasoning behind this ruling was the desire to avoid the thorny constitutional question posed if Congress had entirely pre-empted review of an alien's claims. Id.

---

asylum determinations notwithstanding the limitations of section 1252(a)(2)(C). A closer reading of section 1252(a)(2)(B), however, and one that is more consonant with section 1252(a)(2)(C), is that section 1252(a)(2)(B) leaves untouched—neither limiting nor augmenting—the authority courts would otherwise have to review asylum determinations. Said another way, section 1252(a)(2)(B) is not an independent grant of authority for courts to review asylum determinations, but merely an exemption of asylum determinations from the general class of discretionary determinations that the section makes unreviewable. That being the case, the elimination by section 1252(a)(2)(C) of jurisdiction to review *any* determination in criminal alien removal cases also includes elimination of jurisdiction to review asylum determinations in those cases. Such a reading was implicit in our holding in Ogbudimkpa v. Ashcroft, 342 F.3d 207, 213 (3d Cir. 2003).

5 Whether the courts of appeals retain jurisdiction in criminal alien removal cases to consider "challenges to the factual determinations thought to trigger the jurisdiction-stripping provisions (such as whether an individual is an alien

and whether he or she has been convicted of an 'aggravated felony' within the meaning of the statute)" has been the subject of some debate. See Calcano-Martinez v. INS, 533 U.S. 348, 350 n. 2 (2001). We have read the statute to allow such jurisdictional review. See Drakes v. Zimski, 240 F.3d 246, 247 (3d Cir. 2001).

7

Through its decision in St. Cyr, the Court divided the landscape of immigration review into two parts. Non-criminal aliens retain a right under the statute to deferential, but still substantive, direct review in the courts of appeals. See 8 U.S.C. § 1252(a)(1); Dia v. Ashcroft, 353 F.3d 228 (3d Cir. 2003) (en banc). Criminal aliens have no right to direct review, but retain the residual right to seek relief under the traditional habeas statute. See St. Cyr, 533 U.S. at 314. Having resolved this threshold jurisdictional issue, the Court specifically left open the scope of review available under residual section 2241. That set the stage for what has become the most recent chapter in the debate: Precisely what kinds of challenges are cognizable in criminal alien removal habeas petitions?

**III**.

In answering this question we do not paint on a blank canvas.

The Supreme Court and this Court have recently construed the range of section 2241 review at least so far as to establish what it comprehends at a minimum. In St. Cyr, the Supreme Court rejected the Government's argument that classic habeas review encompassed only review of substantial constitutional or jurisdictional questions. The Supreme Court ruled that "pure questions of law"—such as whether the Attorney General had legal authority to waive removal—fell within the ambit of traditional habeas review. Id. at 301. This Court has recently interpreted such

questions to include issues of application of law to fact, where the facts are undisputed and not the subject of challenge. Ogbudimkpa v. Ashcroft, 342 F.3d 207, 222 (3d Cir. 2003).[6]

But if that marks the minimum review available under general habeas corpus, does it also mark the maximum review? Or, as Bakhtriger contends, are federal courts in habeas cases entitled to address whether removal of a criminal alien, while not erroneous as a matter of constitutional or statutory interpretation, is nevertheless an abuse of discretion or unsupported by substantial evidence? This, of course, is the APA-style standard of review that is afforded when courts of appeals directly review decisions of the BIA, as is permitted in the cases of non-criminal aliens. 8 U.S.C. § 1252(a)(1); see, Dia, 353 F.3d at 228.

---

6 In Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001), the Second Circuit read our earlier decision in Catney v. INS, 178 F.3d 190, 195 (3d Cir. 1999), as holding that section 2241 review does not embrace "'denial of discretionary relief to a criminal alien.'" Respectfully, this reading of our decision in Catney was incorrect. While the context of our comment on scope of review may have been somewhat ambiguous, it actually related to review on direct appeal of a deportation order from the BIA, and did not address habeas review. At any rate, the Second Circuit correctly anticipated the position that we now take in this decision.

We believe that, under section 2241, habeas proceedings do not embrace review of the exercise of discretion, or the sufficiency of the evidence. Our conclusion is supported by the history of interpretation of the general habeas provision over the years; by the structure of the immigration laws as amended in 1996; and by the reasoning of St. Cyr itself.

**A.**

Over a century ago, Congress enacted an early version of a zipper clause by mandating that exclusion decisions of immigration officials were to be final, subject only to review within the executive branch. Act of March 3, 1891, c. 517, § 5; 26 Stat. 827, 828, 1115. Shortly thereafter, the Supreme Court considered an appeal from the denial of a writ of habeas corpus by an excluded citizen of Japan. The Court acknowledged that because the alien's liberty was restrained, she was "doubtless entitled to a writ of *habeas corpus* to ascertain whether the restraint is lawful." Ekiu v. United States, 142 U.S. 651, 660 (1892) (italics in original). But the court observed:

> [T]he final determination of those facts may be entrusted by Congress to executive officers; and in such a case, as in all others, in which a statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and

exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to reexamine or controvert the sufficiency of the evidence on which he acted.

Id.

Until the 1952 amendments to the immigration law allowed broader APA-style judicial review for INS determinations, the Court had hewed mainly to this circumscribed scope of review, with slight modification. See Yamataya v. Fisher, 189 U.S. 86 , 97, 102 (1903); United States ex rel. Vajtauer v. Commissioner of Immigration at Port of New York, 273 U.S. 103 (1927); Bridges v. Wixon, 326 U.S. 135, 149, 156 (1945); Estep v. United States, 327 U.S. 114, 122-23 & n.14 (1946). So long as there was sufficient procedural fairness to comport with due process, courts were not to "weigh the evidence" and were required to honor the administrative decisions "even though they may be erroneous." Estep, 327 U.S. at 122.[7]

---

7 Both Vajtauer and Estep indicated that the writ of habeas corpus might issue where there is "no basis in fact"—i.e., no evidence—for a determination. See Vajtauer, 273 U.S. at 110; Estep, 327 U.S. at 122. This may have been either as a matter of reviewing the legal basis for the agency's jurisdiction, Estep, 327 U.S. at 122-23, or as a matter of due process, see

As we have already observed, when the passage of the APA in 1946 first raised the prospect that immigration decisions might be reviewable under the broader standards of abuse of discretion and substantial evidence, the Supreme Court specifically rejected that approach in the context of habeas corpus. Heikkila, 345 U.S. at 236-37. The Court held that, whatever the minor adjustments in the measure of habeas review over the years, habeas corpus must always be based on bedrock requirements of due process, rather than the "very different . . . statutory [i.e., APA] standard of review, e.g., deciding on 'the whole record' whether there is substantial evidence to support administrative findings of fact." Id. at 236. Heikkila concluded that "it is the scope of inquiry on habeas corpus that differentiates use of the writ from judicial review as that term is used in the Administrative Procedure Act." Id.

United States ex rel Accardi v. Shaughnessy, 347 U.S. 260 (1954), is particularly instructive on this point. The habeas corpus petition in that case was based, inter alia, on the argument that the Attorney General had impermissibly interfered with the discretion that had been delegated by regulations to the BIA, thereby violating those regulations. The Supreme Court held that this transgression of the regulations violated due process and warranted a new hearing.

But the petitioner also raised the contention that "'in all similar cases the [BIA] ha[d] exercised favorable discretion.'" Id. at 264 n.5. This argument was rejected by the Supreme Court, which pointedly observed:

> It is important to emphasize that we are not here reviewing and reversing the manner in which discretion was exercised. If such were the case we would be discussing the evidence in the record supporting or undermining the alien's claim to discretionary relief. Rather, we object to the Board's alleged failure to exercise its own discretion, contrary to existing valid regulations.

Id. at 268.

Despite the Court's essential constancy in restricting the use of habeas corpus to assertions of constitutional or statutory violations, the statutory landscape changed in 1952. Congress's choice in the 1952 immigration law amendments not to expressly supersede or modify the APA for immigration determinations effectively broadened the scope of judicial review of INS determinations. See Shaughnessy v. Perdiero, 349 U.S. at 51-52. In point of fact, the broadened scope of review was literally applicable only to direct appeal of INS determinations under the APA. But it was not long before courts viewed

---

Heikkila 345 U.S. at 235-36 & n. 11; see also Mahler v. Eby, 264 U.S. 32, 41-42 (1924); Zakonaite v. Wolf, 226 U.S. 272, 274 (1912).

Congress as having intended to augment traditional habeas review with broader APA-style review. Compare Jay v. Boyd, 351 US. 345, 354-55 (1956) (explaining that executive discretion to suspend deportation is "a matter of grace" and "unfettered discretion") with United States ex rel Hintopolous v. Shaughnessy, 353 U.S. 72, 77 (1957) (rejecting a challenge to suspension based on claim of abuse of discretion and arbitrary and capricious reasoning).[8] Put another way, in effect courts began treating APA judicial review as one of the laws of the United States enforceable through the habeas statute.

Once the habeas provisions of the immigration statute were added in 1961, they were viewed as consistent with a standard of judicial review calling for APA-style examination of the exercise of discretion and substantiality of evidence. In Moret v. Karn, this Court read the 1952 immigration amendments (as supplemented by the 1961 legislation) to require that in habeas cases:

> [T]he appropriate standard of review in such cases is whether the agency's decision is "arbitrary, capricious, and abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) [the APA].
>
> . . . This standard of review is consistent with the legislative history of the Immigration and Nationality Act of 1952 . . . .

746 F.2d 989, 991 (3d Cir. 1984).[9]

It seems fair to say, then, that classic immigration cases under section 2241 before 1952 were reviewed for constitutional and legal error only, and that immigration cases that arose under the habeas writ between 1952 and 1996 were treated under the same standard of review as direct appeals from the BIA—that is to say, under broader APA review of

---

8 Because the Court in Hintopolous rejected a challenge based on abuse of discretion, the court did not actually consider whether such a challenge was within the scope of habeas review. See Hintopolous, 353 U.S. at 78-79.

Decisions during the 1961 to 1996 time-frame, however, appear to treat the APA standard of review as applicable without any distinction between direct review under old section 1105a(a) and habeas corpus under old section 1105a(b). See, e.g., Mondragon v. Ilchert, 653 F.2d 1254, 1255-56 (9th Cir. 1980).

---

9 Some of the courts adopting the view that section 1105a created a basis for habeas corpus jurisdiction independent from 28 U.S.C. § 2241 have found that, from 1961 to 1996, broader review was available exclusively through 1105a habeas, and that 2241 habeas was available only to aliens asserting constitutional or statutory violations. See Gutierrez-Chavez v. INS, 298 F.3d 824, 827-28 (9th Cir. 2002).

discretion and of the sufficiency of the evidence.

## B.

That brings us to the 1996 amendments under AEDPA and IIRIRA. The government initially advocated that the amendments to the INA enacted by AEDPA and IIRIRA be treated as precluding all judicial examination of removal determinations in the cases of criminal aliens. The Supreme Court, however, rejected that view. See St. Cyr, 533 U.S. at 312. The Court held that Congress succeeded only in repealing direct appellate review of such cases and the special immigration habeas provisions of section 1105a; what remained was the original section 2241 habeas remedy. That fact in itself suggests that the scope of review one would expect to find under the residual section 2241 is no greater than what existed before Congress began to graft APA-style review onto habeas jurisdiction in 1952.

To be sure, St. Cyr does not explicitly set forth the boundaries of habeas review of removal actions under section 2241, nor does it expressly address whether review of discretion or administrative fact-finding is available. See Sol, 274 F.3d at 651. But the actual reasoning in the St. Cyr decision compels the conclusion that under section 2241 as it currently stands, the broader species of review for substantial evidence and abuse of discretion typical of APA challenges must be wholly out of bounds.

In St. Cyr, the Court confronted the 1996 statutory "zipper" language that states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). The judicial review section, 8 U.S.C. § 1252, in turn provides for direct review by the courts of appeals of BIA decisions, but prohibits it in the case of criminal aliens.

The meaning of the term "judicial review" became the critical interpretive issue presented to the Supreme Court. If judicial review meant all review by any court, as the government and the dissenting Justices urged, then the zipper clause and the criminal alien preclusion clause, taken together, made removal of criminal aliens totally unreviewable under the statutory scheme. If "judicial review" was a term of art referring only to a certain type of court review, however, then what was precluded was not all review by the courts, but only review of a certain kind.

The majority in St. Cyr adopted the latter interpretation, seizing upon the earlier decision in Heikkila to differentiate between "judicial review" in a specific

12

sense, and court review under the traditional habeas writ. See St. Cyr, 533 U.S. at 312 (citing Heikkila). The Court declared: "In the immigration context, 'judicial review' and 'habeas corpus' have historically distinct meanings." St. Cyr, 533 U.S. at 311 (citing Heikkila, 345 U.S. at 236). But for this distinction to make sense in reading the 1996 zipper amendments, there had to be some significant difference between the scope of review under "judicial review" and that under section 2241 habeas corpus. Otherwise, the amendments' withdrawal of "judicial review" on the one hand would be nullified on the other hand by the retention of habeas corpus with identical scope of court review. In other words, a definition of habeas corpus jurisdiction that made the scope of claims available on habeas review coextensive with the scope of claims available on direct review would necessarily render the preclusion provision of AEDPA and IIRIRA utterly pointless and would create an internal contradiction within the immigration statutes.

As a matter of logic, therefore, the Court necessarily recognized that the "limited role played by the courts in habeas corpus proceedings was far narrower than the judicial review authorized by the APA." Id. at 312. In effect, the Court reaffirmed the rule set forth in Heikkila. And by drawing that distinction as to scope of review, the Court was able to give meaning to the 1996 statutory preclusion provision. For under this interpretation, AEDPA and IIRIRA succeeded in precluding broader APA-style "judicial review" for criminal aliens by eliminating direct "judicial review" in the courts of appeals. What remained for criminal aliens facing removal was only the core section 2241 habeas provision with its narrower scope of pure legal review.

The Supreme Court in St. Cyr also addressed the provision of AEDPA that specifically eliminated one of the 1961 special habeas provisions of the INA, by deleting 8 U.S.C. § 1105a(a)(10). St. Cyr, 533 U.S. at 308-10. The Court held that the repeal of this section 1105a special habeas provisions did not implicitly repeal the residual habeas statute, section 2241. Again, that interpretation can make sense only if, as we have seen, section 2241 residual habeas corpus is understood to carry a more limited scope of review than the broader APA-style review which the courts applied under section 1105a. See Gutierrez-Chavez v. INS, 298 F.3d 824, 828 (9th Cir. 2002). Were section 1105a review and section 2241 review to have identical scope, the repeal by AEDPA and IIRIRA of the former—and not the latter—would appear to be a vain or incomplete legislative act.

In short, to accept Bakhtriger's contention here that section 2241 habeas review incorporates an examination of the exercise of discretion or weight of the evidence in the underlying removal proceedings would be to erase the distinction between "judicial review" and habeas review that was an indispensable ingredient in the reasoning of St. Cyr. See 533 U.S. at 311-12. Bakhtriger's

13

argument would also wholly nullify the content of the preclusion provisions that Congress enacted and would defy decades of the history of interpretation of section 2241. Accordingly, we believe that the scope of review under section 2241 must be confined to questions of constitutional and statutory law.

Our interpretation is consistent with decisions in other circuits. In the wake of St. Cyr, we are not aware of any cases that have upheld habeas review of factual findings or discretionary determinations in criminal alien removal cases. Rather, all circuits to decide the issue have limited criminal alien habeas petitions to constitutional challenges or errors of law. See Bravo v. Ashcroft, 341 F.3d 590, 592-93 (5th Cir. 2003); Gutierrez-Chavez, 298 F.3d at 828; Carranza v. INS, 277 F.3d 65, 72 (1st Cir. 2002); Sol, 274 F.3d at 651; Bowrin v. INS, 194 F.3d 483, 490 (4th Cir. 1999).[10]

We join them.

**IV.**

Bakihtriger's habeas petition challenges both the underpinnings of the BIA factual findings and the BIA's decision not to exercise discretion in favor

of asylum. For the reasons stated above, these matters are not reviewable under the residual habeas provision—28 U.S.C. § 2241. Indeed, the BIA's determination that the circumstances of Bakhtriger's case do not rise to the level of other cases in which the authorities have exercised their discretion in favor of asylum is precisely the sort of application of discretion that the Supreme Court declined to review in Accardi, 347 U.S. at 264. In Accardi, the petitioner's challenge to the exercise of discretion by the immigration officials was effectively the same as that mounted by Bakhtriger—the "allegation that the appellant was treated differently from other aliens similarly situated." 206 F.2d at 901. The Supreme Court expressly affirmed the court of appeals in its refusal to entertain that challenge to discretion (although the Court ultimately reversed on another ground). Accardi, 347 U.S. at 264 n. 5. We reject Bakhtriger's identical challenge to discretion here.

Perhaps recognizing that his effort to obtain review of discretion and evidence would be ill-fated, Bakhtriger tries to repackage these claims as matters of law by pointing out that the reason he is subject to removal is pursuant to a law of the United States, and that the "substantial evidence" standard under APA-style review is established as a legal requirement. The fact that there are legal principles that govern these matters, however, does not convert every question of fact or discretion into a question of law. If it did, rivers of ink expended in case law distinguishing between legal and factual

---

10 Yang v. INS, 109 F.3d 1185, 1195-96 (7th Cir. 1997) takes the same position, but we do not rely on it because the Seventh Circuit appears to have relied in part on its view that IIRIRA had abolished review under section 2241, a position later repudiated by St. Cyr.

questions would have been spilled for no reason. Similarly, although review as a matter of law encompasses deciding whether legal principles have been properly applied to undisputed facts, see Ogbudimkpa, 342 F.3d at 222, it does not encompass deciding the factual issues themselves.

We will not delineate the precise boundaries between permitted review of legal questions and forbidden review of factual issues or matters of discretion in this opinion. What is clear in this case is that the review Bakhtriger seeks is squarely on the forbidden side of the line. The District Court correctly determined that it lacked jurisdiction to review the claims in Bakhtriger's habeas petition.

## V.

For the foregoing reasons, we will affirm the judgment of the District Court.