**Oleg KANIVETS, Petitioner**

**v.**

**William RILEY et al., Defendants.**

**No. Civ.A.03–5377.**

United States District Court, E.D. Pennsylvania.

June 1, 2004.

Lawrence H. Rudnick, Philadelphia, PA, for Petitioner.

Richard M. Bernstein, Philadelphia, PA, for Respondents.

### MEMORANDUM & ORDER

KATZ, District Judge.

Oleg Kanivets filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 *et seq.* seeking a declaration that he merits asylum and withholding of removal. On October 3, 2003, this court granted Kanivets' request for a stay of deportation pending resolution of the petition. After a review of the petitioner's Brief in Support of the Writ, the Government's Brief in Opposition to the Petition, and the petitioner's Reply Brief and careful consideration of the issues, the court grants the petition for a writ of habeas corpus and remands the case for reconsideration of Kanivets' asylum application.

Petitioner Kanivets is ethnically Russian, a practicing Jew, and a citizen of the Kyrgyz Republic, also known as Kyrgyz-stan. Kanivets left Kyrgyzstan for the United States on January 21, 1998 and applied for asylum on July 9, 1999. Kanivets claims that he had a well-founded fear of persecution in Kyrgyzstan based on his Jewish ancestry and religion. In his application for asylum, he described several incidents that supported his fear of religious persecution: being physically assaulted by a group of Kyrgyzs on two occasions; being threatened several other times if he did not move to Israel; having his apartment vandalized with antisemitic graffiti; and being fired from his job out of religious discrimination. On November 29, 2000, an Immigration Judge ("IJ") denied Kanivets' application for asylum, finding that Kanivets was a victim of "societal violence" targeted against Russians rather than a victim of widespread societal discrimination or violence against Jews. Although he found Kanivets' testimony as to his experiences in Kyrgyzstan credible, the IJ concluded that Kanivets had not established that he faced a reasonable possibility of future persecution due to his Jewish religion and ancestry. Kanivets appealed to the Board of Immigration Appeals on December 29, 2000, but the Board dismissed his appeal on October 28, 2002. On September 11, 2003, the Immigration and Customs Enforcement issued a Notice to Kanivets to surrender on October 8, 2003 to be deported. This court stayed his deportation pending resolution of his habeas petition.

▮ This court has jurisdiction to hear Kanivets' habeas petition. *See INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding that neither Antiterrorism and Effective Death Penalty Act nor Illegal Immigration Reform and Immigrant Responsibility Act repealed district court jurisdiction to review aliens' habeas petitions filed under 28 U.S.C. § 2241(c)); *Ogbudimkpa v. Ashcroft et al.,*

342 F.3d 207 (3d Cir.2003) (holding that Foreign Affairs Reform and Restructuring Act limits judicial review of final orders of removal, but a district court retains jurisdiction to review habeas corpus petition claiming that removal would violate Convention Against Torture). The Third Circuit has held that under *St. Cyr,* district courts have jurisdiction over habeas petitions filed by both criminal and non-criminal aliens. *See Chmakov v. Blackman,* 266 F.3d 210, 213 (3d Cir.2001) (noting that Supreme Court presented two rationales for preserving habeas for aliens: the strong presumption in favor of judicial review of administrative decisions and the longstanding requirement of a clear statement of congressional intent before repealing habeas jurisdiction).

■ The government argues that because Kanivets objects to quintessentially factual determinations in the IJ opinion, this court has no jurisdiction under Section 2241 based on a recent Third Circuit decision, *Bakhtriger v. Elwood,* 360 F.3d 414 (3d Cir.2004). In *Bakhtriger,* the INS ordered removal of a lawful permanent resident previously granted asylum after he was convicted of a felony controlled substances offense. Bakhtriger applied for asylum and withholding of removal and relief from removal under the Convention Against Torture. *See Bakhtriger,* 360 F.3d at 416. Bakhtriger and his mother presented testimony to the IJ about past religious persecution, pervasive antisemitism in their country, and several incidents where Bakhtriger was physically attacked. Although the INS had presented sufficient proof of changed country conditions to rebut the presumption that Bakhtriger had a well-founded fear of persecution, the IJ ordered a discretionary grant of asylum due to Bakhtriger's compelling reasons for not wanting to return to his country of origin. The INS appealed and the BIA overturned the IJ's discretionary grant of asylum. Bakhtriger filed a petition for a writ of habeas corpus, claiming that the factual record did not support the IJ's finding that changed country conditions negated his fear of persecution and that the BIA erred in reversing the IJ's discretionary grant of asylum. *See Bakhtriger* at 417. The district court dismissed the petition on grounds that the scope of review of immigration proceedings under Section 2241 is limited to constitutional claims or legal errors. *See id.* The Third Circuit affirmed, holding that in criminal alien habeas removal proceedings, federal courts should not review the exercise of discretion or the sufficiency of the evidence. *See id.* at 420 (noting that such an "APA-style of review" is only afforded when non-criminal aliens file direct appeals from BIA decisions to the courts of appeal).

Petitioner Kanivets responds that the *Bakhtriger* decision did not deprive this court of jurisdiction over his case because he is not challenging any factual findings or discretionary decisions by the IJ or BIA. Instead, Kanivets claims that the IJ committed a legal error in applying law to undisputed facts. In *Ogbudimkpa v. Ashcroft,* 342 F.3d 207, 222 (3d Cir.2003), the Third Circuit held that "the erroneous application or interpretation of statutes" was within the scope of habeas review. Kanivets notes that whether an alien meets the definition of a refugee as defined in 8 U.S.C. § 1101(a)(42)(A) is not a discretionary decision, although once this determination is made, it is discretionary whether asylum is granted. *See* Reply Brief at 2, citing *Matter of Pula,* Interim Dec. 3033 (BIA 1987). The court agrees that Kanivets' primary challenges to the IJ's decision concern legal as opposed to factual issues and finds that it has jurisdiction to review this habeas petition.

■ Upon review of the parties' briefs and the record, the court finds that the IJ

made at least two legal errors in denying petitioner's application for asylum. First, the IJ erred in requiring Kanivets to present objective evidence showing that there was a clear-cut tradition of antisemitism in Kyrgyzstan. The IJ relied on a report by the U.S. Department of State that there was no such evidence of widespread societal discrimination against Jews in Kyrgyzstan in order to refute credible testimony of Kanivets and his mother as to their own experiences with antisemitic violence and harassment. An applicant for asylum bears the burden of showing a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(a). An applicant's credible testimony as to his persecution "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a). When an alien demonstrates past persecution, a presumption arises that he or she has a well-founded fear of future persecution. The burden then shifts to the government to prove by a preponderance of the evidence that conditions in the country of origin have changed such that petitioner no longer has a reasonable fear of persecution if he or she were to return. *See* 8 C.F.R. § 208.13(b)(1)(i). The IJ found credible Kanivets' testimony about being threatened and assaulted by persons who told him that they would harm him further if he did not leave for Israel, receiving similar threatening letters and phone calls, and finding the apartment that he shared with his mother vandalized with antisemitic graffiti. *See* Oral Decision and Order of the Immigration Judge at 2. Although he accepted this testimony, the IJ found that Kanivets' account of religious persecution in Kyrgyzstan was not corroborated by objective evidence from the U.S. Department of State, Amnesty International, or news sources. *See id.* at 3–4. This application of the law defining who quali-

fies as a "refugee" was improper. Credible testimony by Kanivets and his mother about the religious nature of the harassment, assault, and discrimination is objective evidence. Kanivets had also produced an expert witness who testified as to instances of Islamic fundamentalism in Kyrgyzstan, evidence that Jews are leaving Kyrgyzstan in steady numbers for Israel, and an article from 1991 about antisemitic violence in Central Asia. Therefore, it was error for the IJ to state that "there is no objective basis for the respondent's subjective claim that he has been the victim of persecution in Kyrgyzstan because of his Jewish ethnicity" and shift the burden to Kanivets to refute the Department of State report that there was no clear-cut tradition of antisemitism in Kyrgyzstan. *See id.* at 6. *See, e.g., Li Wu Lin v. I.N.S.,* 238 F.3d 239 (3d Cir.2001) (holding that the BIA improperly relied on a letter from the State Department in refuting an alien's testimony as to his persecution).

■ Second, the IJ erred in holding that Kanivets was time barred from applying for asylum. *See* Oral Decision of the Immigration Judge at 7. The Illegal Immigration Reform and Immigrant Responsibility Act imposed a one-year statute of limitations for filing an application for asylum, however if circumstances in the country that affect eligibility for asylum change, the period of application may be extended and "delayed awareness" of such changes can be considered in evaluating what is a reasonable period for filing a late application. *See* 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 208.4(a)(4)(ii). Although the time limitation is not reviewable under INA § 208(a)(3), application of the "changed circumstances" exception is a legal issue reviewable on writ of habeas corpus, as preserved by the Supreme Court in *St. Cyr.* In his opinion, the IJ did not consider Kanivets' arguments that

there were changed circumstances that materially affected his eligibility for asylum in that conditions in Kyrgyzstan had deteriorated since he left the country in January 1998. Kanivets stated that it was not until his mother joined him in the United States in April 1999 and apprised him of developments that Kanivets decided that he could not return to Kyrgyzstan and that he would apply for asylum. It was legal error not to consider these arguments in favor of tolling the statute of limitations for changed country conditions.

An appropriate Order follows.

### *ORDER*

**AND NOW**, this 1st day of June, 2004, upon consideration of the Petition to Issue a Writ of Habeas Corpus and the response thereto, it is hereby **ORDERED** that the Petition is **GRANTED**. The case is remanded to the Board of Immigration Appeals for further proceedings consistent with this opinion.