

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-9-2003

# Avila-Macias v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket 01-4307

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Avila-Macias v. Atty Gen USA" (2003). *2003 Decisions.* Paper 511.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/511

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed January 23, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-4307

ANTONIO AVILA-MACIAS,
Petitioner

v.

JOHN ASHCROFT, Attorney General
of the United States of America,
Respondent

ON APPEAL FROM THE UNITED STATES IMMIGRATION
& NATURALIZATION SERVICE
Agency No. 0090-1: A39 292 486

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2003

Before: SCIRICA, BARRY, and SMITH, *Circuit Judges*

(Opinion Filed: January 23, 2003*)

---

* This Opinion was originally issued as a not-precedential opinion. By Order of the Court dated May 9, 2003, the Opinion was designated for publication.

Ronald D. Richey, Esq.
Ronald D. Richey & Associates
966 Hungerford Drive
Suite 8B
Rockville, MD 20850

*Attorney for Petitioner*

Emily A. Radford, Esq.
Terri J. Scadron, Esq.
John M. McAdams, Jr., Esq.
Papu Sandhu, Esq.
United States Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878
Washington, D.C. 20044

*Attorneys for Respondent*

---

## OPINION OF THE COURT

BARRY, *Circuit Judge*:

On November 29, 2001, the Immigration and Naturalization Service ("INS") issued an order reinstating a prior order of deportation against petitioner Antonio Avila-Macias pursuant to Section 305(a)(5) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[1] Avila-Macias appeals, arguing that (1) Section 305(a)(5) does not apply to him because he was previously deported as opposed to removed; (2) applying Section 305(a)(5) in his case would be impermissibly retroactive because he was deported prior to April 1, 1997, the effective date of IIRIRA; (3) the reinstatement order was invalid because it did not specify where and when he illegally reentered the United States and because his counsel was not notified of its issuance; and (4) the

---

1. Section 305(a)(5) of IIRIRA became Section 241(a)(5) of the Immigration and Nationality Act and is codified at 8 U.S.C. § 1231(a)(5). We will refer to this provision as "Section 305(a)(5)."

deportation order which underlies the order of reinstatement is vulnerable to collateral attack.

We have jurisdiction pursuant to Section 242(a)(1) of the Immigration and Nationality Act, which is codified at 8 U.S.C. § 1252(a)(1), and will affirm for the reasons we summarize as follows. First, Section 309(d)(2) of IIRIRA provides that "any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." There is no reason to limit the applicability of this broadly-worded provision in the ways that Avila-Macias advocates. Second, while Avila-Macias was deported prior to the effective date of IIRIRA, he does not allege that he illegally reentered the United States prior to it. Thus, the consequences of his actions at the time that he illegally reentered are the consequences he faces now. Third, neither the fact that the INS did not specify where or when Avila-Macias reentered nor the fact that his counsel was not notified that reinstatement proceedings had been initiated invalidates the reinstatement order which was issued in this case. Finally, while Avila-Macias may be able to collaterally attack the underlying deportation order elsewhere, we are precluded from reviewing it in a reinstatement proceeding. *See* 8 U.S.C. § 1231 (a)(5).

## I.

Avila-Macias is a native Mexican and citizen of Mexico who entered the United States without inspection in 1979, when he was five years old. He became a lawful permanent resident in 1985. In 1995, he was convicted of "corporal injury to spouse/co-habitant/child's parent" and of vehicle theft, and in 1996, he was convicted of second-degree burglary. Later in 1996, the INS issued an order to show cause charging him with deportability as an alien convicted of an aggravated felony. An immigration judge found that Avila-Macias was deportable as charged and that he was not eligible for relief from deportation, and ordered him deported to Mexico. Avila-Macias, who was not represented by counsel, waived his right to appeal to the Board of Immigration Appeals. On January 22, 1997, he was deported to Mexico.

Although, pursuant to 8 U.S.C. § 1182(a)(9)(A)(ii)(I), Avila-Macias was barred from re-entering the United States for ten years following his removal, he reentered within that time. On October 16, 2001, the INS served him with Form I-871, entitled "Notice of Intent/Decision to Reinstate Prior Order," which alleged that he was removed on January 22, 1997 and that he had illegally re-entered on an unknown date and at an unknown place. On November 29, 2001, the INS issued a final order of reinstatement against him.[2]

## II.

The first question presented is whether Section 305(a)(5), which gives the Attorney General the authority to reinstate a prior order of removal where an alien has illegally reentered the United States, also permits the reinstatement of a prior order of deportation.[3] Before IIRIRA, individuals who were "ineligible for admission into the United States and were never admitted into the United States were referred to as 'excludable,' while aliens who had gained admission, but later became subject to expulsion from the United States, were referred to as 'deportable.'" *United States v. Lopez-Vasquez*, 227 F.3d 476, 479 n.2 (5th Cir. 2000). After IIRIRA, aliens who were previously referred to as "excludable" are termed "inadmissible," and the term

---

2. On December 8, 2001, Avila-Macias filed a motion to re-open the prior deportation proceedings with an immigration judge in Imperial, California. The motion was denied on April 26, 2002 and Avila-Macias appealed to the Board of Immigration Appeals. His appeal is currently pending. On March 13, 2002, he filed a petition for a writ of habeas corpus in the U.S. District Court for the Eastern District of Pennsylvania. The petition was transferred to the U.S. District Court for the Southern District of California, where it is pending.

3. The full text of Section 305(a)(5) is as follows: "(5) REINSTATEMENT OF REMOVAL ORDERS AGAINST ALIENS ILLEGALLY REENTERING.— If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry."

"removal proceedings" covers proceedings applicable to both inadmissible and deportable aliens. *Id.* Thus, a reference to an order of removal would encompass an order of deportation. *See Bejjani v. INS*, 271 F.3d 670, 674 n.2 (6th Cir. 2001)(IIRIRA replaced the concepts of exclusion and deportation with the concept of removal); *Omar v. INS*, 298 F.3d 710, 712 n.2 (8th Cir. 2002)(IIRIRA eliminated the previous legal distinction between deportation and removal proceedings); *United States v. Lopez-Gonzalez*, 183 F.3d 933, 934 (9th Cir. 1999)(same); *United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998) (same).

Avila-Macias essentially argues that, in spite of these changes, the words "deportation" and "removal" are not interchangeable, thus attempting to limit the applicability of Section 309(d)(2) of IIRIRA, which provides as follows: "TRANSITIONAL REFERENCES.—For purposes of carrying out the Immigration and Nationality Act, as amended by this subtitle— . . . (2) any reference in law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation."

Avila-Macias argues that Section 309(d)(2) does not apply as broadly as it appears, because if it did it would render superfluous Congress' reference to orders of exclusion and deportation in IIRIRA § 308(d)(4)(J), which amended 8 U.S.C. § 1326(a) and which penalizes aliens who reenter the United States after having "been denied admission, excluded, deported, or removed." This argument has been rejected by several Courts of Appeals. *See, e.g., Lopez-Gonzalez*, 183 F.3d at 935 ("any distinction between deportation and removal is legally insignificant for purposes of § 1326"); *United States v. Pena-Renovato*, 168 F.3d 163, 164 (5th Cir. 1999)(same); *Pantin*, 155 F.3d at 92-93 (same). We, too, will not ignore the plain language of Section 309(d)(2) or the other provisions of IIRIRA which eliminate the distinction between deportation and removal, in order to read Section 308(d)(4)(J).

Avila-Macias' second argument with regard to Section 309(d)(2) is that it only applies to transitional rules cases, which are those cases in which the alien was in exclusion or deportation proceedings before IIRIRA's effective date, but in which a hearing was not held until after the effective

date. *See* IIRIRA § 309(c)(2). In such cases, the Attorney General can elect to apply the provisions of IIRIRA. Avila-Macias argues that Section 309(d)(2) permits only those final orders of deportation or exclusion which were entered in transitional rules cases to be treated as removal orders in future reinstatement proceedings.

Avila-Macias does not point to anything in the statute or in the cases to support this interpretation of Section 309(d)(2). The transitional rules are contained in Section 309(c) of IIRIRA, which is captioned "TRANSITION FOR ALIENS IN PROCEEDINGS" and which begins by limiting its applicability to aliens in exclusion or deportation proceedings before IIRIRA's effective date. While Section 309(d) *is* captioned "TRANSITIONAL REFERENCES," it provides that it applies to "any reference in law," "for purposes of carrying out the Immigration and Nationality Act." In addition, if Section 309(d)(2) applied only to those transitional rules cases where the Attorney General chose to apply IIRIRA, it would be unnecessary, because, as noted above, IIRIRA eliminates the distinction between deportation and exclusion proceedings and subsumes both under the rubric of removal.[4]

Avila-Macias argues, next, that IIRIRA's reinstatement provision was impermissibly retroactive as applied to him because the underlying deportation order was issued prior to IIRIRA's effective date. To determine if a statute applies to events which occurred prior to its enactment, a two-prong test is applied. *See Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994); *Perez v. Elwood*, 294 F.3d 552, 558 (3d Cir. 2002). First, a court must determine whether Congress' intent with regard to temporal reach is clear from the language of the statute. If it is not, the court must determine whether application of the statute to pre-enactment conduct would have a retroactive effect. If so,

---

4. Avila-Macias' final argument with regard to Section 309(d)(2) is that it would have an impermissibly retroactive effect if it were applied in cases where either the issuance of the deportation order or the illegal reentry occurred prior to the effective date of IIRIRA. This argument fails for the reasons given below with regard to Avila-Macias' argument that the reinstatement statute would have an impermissibly retroactive effect were it applied to him.

"the court should presume that the legislation does not apply to the conduct in question, and apply it only prospectively." *Perez*, 294 F.3d at 558.

With regard to the first prong of the *Landgraf* test, Avila-Macias argues that Congress' intent that the reinstatement provision not be applied retrospectively is clear, for the reasons given by the Ninth Circuit in *Castro-Cortez v. INS*, 239 F.3d 1037, 1050-1052 (9th Cir. 2001). *See also Bejjani*, 271 F.3d at 676-687 (same).[5] Thus, he argues that Congress clearly did not intend retrospective application because while the prior reinstatement provision specified that it applied to aliens who "unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952 . . . ," the new reinstatement provision is silent. *Compare* 8 U.S.C. § 1252(f)(repealed in 1996) with IIRIRA § 305(a)(5). While the omission of retroactivity language provides some support for Avila-Macias' argument regarding Congress' intent, it does not constitute an express mandate regarding the statute's temporal reach. *See Landgraf*, 511 U.S. at 280.

Avila-Macias also points to several sections of IIRIRA which implicate conduct occurring before the statute was enacted, and in which Congress specified that the new rule applied to pre-enactment conduct. *See, e.g.*, IIRIRA §§ 342(b) (incitement of terrorist activity ground for exclusion regardless of when it occurs); 347(c) (unlawful voting ground for exclusion regardless of when it occurs). By negative implication, Avila-Macias argues, the absence of such specification in Section 305(a)(5) indicates that Congress did not intend it to be applied to deportation

---

5. This case is distinguishable from *Bejjani* and *Castro-Cortez* because in those cases the aliens illegally reentered prior to IIRIRA's effective date. Here, Avila-Macias was *deported* prior to IIRIRA's effective date, but he does not claim to have reentered prior to it. In his brief, he frames the issue as whether the new statute "should be applied retroactively to conduct, i.e. issuance of Petitioner's January 1997 Deportation Order, that takes place before its enactment." Brief at 13. It is not necessarily the case that Congress would intend that aliens who illegally reentered the country prior to the effective date of the statute be treated the same as those who reentered afterwards.

orders entered prior to the statute's effective date. This "negative implication" argument fails because IIRIRA also contains sections in which Congress specified that the section did *not* apply to pre-enactment conduct.[6] *See, e.g.,* IIRIRA §§ 344(c)(false claim of citizenship ground for exclusion only where it occurred on or after date of enactment); 352(b) (renouncing citizenship for taxation purposes ground for exclusion only where it occurred on or after date of enactment).

Avila-Macias presses on, however, arguing that because Congress enacts legislation with the *Landgraf* rule in mind, where it is silent it can be presumed that it did not intend for it to be applied retrospectively. This argument fails as well because it could just as easily be argued that Congress remained silent in the expectation that courts would proceed to the second step of the *Landgraf* analysis, determine whether the provision would have a retroactive effect and, if it did, only then decline to apply it retrospectively. What is clear is that Congress' intent with regard to the temporal reach of Section 305(a)(5) of IIRIRA is *not* clear. *See Alvarez-Portillo v. Ashcroft*, 280 F.3d 858, 865 (8th Cir. 2002)(Congress' intent unclear); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 299 (5th Cir. 2002)(same); *Velasquez-Gabriel v. Crocetti, Jr.*, 263 F.3d 102, 108 (4th Cir. 2001)(same).

Turning to *Landgraf*'s second prong, " '[t]he inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.' " *INS v. St. Cyr*, 533 U.S. 289, 321 (2001). A new statute may not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280.

6. We note that in Section 324 of IIRIRA, which governs the penalty for reentry after deportation, Congress specified that the new penalty provision applies in cases in which departure occurred before, on, or after the effective date of enactment as long as reentry occurred on or after the date of enactment. It could well be argued that this is likely what Congress intended with regard to the reinstatement provision as well.

Section 305(a)(5) "expands the types of orders subject to reinstatement, provides that the prior order of removal is not subject to being reopened or reviewed, and bars aliens from applying for any form of relief, other than a claim for asylum." *Bejjani*, 271 F.3d at 675. In addition, under the prior implementing regulations, an alien in reinstatement proceedings had a right to counsel, to develop a record, and to a hearing before an immigration judge. *Id.* Under the new regulations, aliens have none of these rights; instead, an immigration officer determines whether reinstatement is appropriate. *See* 8 C.F.R. § 241.8.

Avila-Macias claims that applying these new rules to him would be impermissibly retroactive because he "had no notice, before leaving the United States, of the consequences of an illegal reentry." Brief at 18. If he had reentered prior to the effective date of IIRIRA, he could at least plausibly argue that he did so believing (1) that he would be entitled to a hearing at which he could contest the legality of his underlying deportation order and (2) that he would be entitled to apply for discretionary relief. *See Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1129 (9th Cir. 2001). He does not argue that he reentered before IIRIRA's effective date, however. Applying IIRIRA to him — an alien who was deported prior to its effective date, but who reentered afterwards — does not have an impermissible retroactive effect because the consequences of an illegal reentry at the time that he reentered are the consequences he faces now.

Avila-Macias' third argument is that the notice of reinstatement proceedings which was issued to him was invalid because it did not give the date and place of his reentry. He is wrong. Neither the reinstatement statute nor its implementing regulation requires the INS to specify the date and place of an alien's illegal reentry in the notice of reinstatement proceedings. *See* IIRIRA § 305(a)(5); 8 C.F.R. § 241.8(a).

The fact that Avila-Macias' counsel of record was not notified that reinstatement proceedings had been initiated is also not a ground for invalidating the reinstatement order. To prevail on his claim that the failure to notify his counsel violated his right to due process of law, Avila-

Macias would have to show that he was prejudiced. *See, e.g.*, *Ojeda-Terrazas*, 290 F.3d at 7; *Campos-Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir. 1999). This he cannot do, because he concedes that he is subject to a prior order of deportation and that he illegally reentered the United States. This is all that the immigration officer was required to find before issuing the reinstatement order. *See* 8 C.F.R. § 241.8(a).

Finally, Avila-Macias seeks to collaterally attack the order of deportation underlying the reinstatement order. He argues that the immigration judge erred when he found that Avila-Macias was ineligible for discretionary relief from deportation because discretionary relief under former Section 212(c) of the Immigration and Nationality Act, which was amended by the Antiterrorism and Effective Death Penalty Act of 1996 and then repealed by IIRIRA, remains available to aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *St. Cyr*, 533 U.S. at 326.

Whether he is right or wrong, we lack jurisdiction over his challenge to the 1997 deportation order. Section 305(a)(5) provides that "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." *See Gomez-Chavez v. Perryman*, 308 F.3d 796, 801 (7th Cir. 2002); *Ojeda-Terrazas*, 290 F.3d at 295. Whether another court has jurisdiction over his claim is not an issue we need address. Suffice it to say, Avila-Macias has filed a petition for a writ of habeas corpus now pending in the District Court of Southern California and the issue can be raised and decided there. *See, e.g.*, *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002)(holding that the district court had jurisdiction over a challenge to the underlying order of removal in a Section 305(a)(5) case).

A True Copy:
     Teste:

                 *Clerk of the United States Court of Appeals*
                       *for the Third Circuit*