Marcos DeJESUS CORONA, Petitioner,

v.

C.J. DEROSA, Warden, F.C.I. Fort Dix, Respondent.

Civil Action No. 04–603(JEI).

United States District Court, D. New Jersey.

July 16, 2004.

Marcos DeJesus Corona, a/k/a Marco Corona, Kearney, NJ, pro se.

Christopher J. Christie, United States Attorney by J. Andrew Ruymann, Assistant U.S. Attorney, Trenton, NJ, for Respondent.

## OPINION

IRENAS, Senior District Judge:

Presently before the Court is Petitioner Marcos DeJesus Corona's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth below, we deny Petitioner's application.

## I.

On April 10, 1992, Petitioner, Marcos DeJesus Corona ("Corona"), a citizen of the Dominican Republic, was deported pursuant to a deportation order dated April 8, 1992, following his December 27, 1989 convictions for delivery of a Schedule II controlled substance (cocaine) and con-

spiracy. His deportation was effected in accordance with 8 U.S.C. § 1227(a)(2)(B)(i), which provides for the deportation of aliens convicted of certain narcotics offenses. At the time of his deportation, Corona did not contest his removal from the United States, nor did he apply to the Attorney General for reentry following his deportation.

Corona illegally reentered the United States later that year (1992) and was convicted, on December 21, 1999, of illegal reentry by an alien after deportation under 8 U.S.C. § 1326(a) & (b)(2). The Honorable Charles R. Weiner of the Eastern District of Pennsylvania sentenced Corona to forty-one (41) months imprisonment and three years supervised release.

On March 20, 2000, Corona was convicted of criminal conspiracy in the Commonwealth of Pennsylvania. The Honorable Thomas M. DelRicci sentenced Corona to four to ten years and stipulated that the sentence be served concurrent with all previously imposed sentences. Corona remained in the custody of the state of Pennsylvania at S.C.I. Houtzdale.

On November 20, 2002, a State of Pennsylvania parole board approved Corona for release on or after February 19, 2003 to Federal Bureau of Prisons or Immigration and Naturalization Service ("INS") custody. The parole board approved an April 16, 2003 release date.

On April 16, 2003, Corona was released from state custody and entered federal custody. Corona was assigned to F.C.I. Fort Dix and entered that facility on May 13, 2003. Corona alleges, and prison records confirm, that the initial computation of his federal sentence began on April 16, 2003. His initial projected release date from federal custody was April 8, 2006.

On February 9, 2004, Corona filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241:(1) challenging the computation of his prison time, specifically alleging that during his tenure in state custody, his federal sentence should have been running concurrently; (2) contesting the right of a district court judge to order deportation as a condition of supervised release;[1] (3) asserting a right to a hearing to determine his deportability; and (4) claiming United States citizenship. Corona did not pursue available avenues of relief within the corrections system, and claims in his habeas petition that those avenues were denied him.

On February 17, 2004, Corona's sentence computation was updated to allow his federal sentence to commence on February 28, 2001 (while Corona was in the custody of the Commonwealth of Pennsylvania) rather than on April 16, 2003 (when he entered federal custody).[2] Following a *nunc pro tunc* designation, Corona was scheduled for release on February 18, 2004.

On February 20, 2004, Corona was released into the custody of the Department of Homeland Security ("DHS") and scheduled for deportation on March 24, 2004, pursuant to 8 U.S.C. § 1231(a)(5), which provides that if an alien is found to have reentered the United States illegally "after having been removed or having departed voluntarily, under an order of removal, the prior order is reinstated from its original date." Corona acknowledged that his original April 8, 1992 removal order was reinstated in a Notice of Intent/Decision to

---

1. This claim was located in a page from an unidentified brief attached to Corona's petition. In consideration of the leniency pro se petitioners are afforded in pleading, we address it as one of Corona's claims.

2. It appears that at this time the Eastern District of Pennsylvania indicated that it had no objection to Corona's state and federal sentences running concurrently.

Reinstate Prior Order dated February 19, 2004.

On March 23, 2004, this Court issued an Order staying Corona's deportation pending the outcome of the instant habeas petition.

## II.

■ As a preliminary matter, we note that our jurisdiction over this case is proper under 8 U.S.C. § 1252(b)(5) and (a)(2)(C). Although 8 U.S.C. § 1252(b)(5) confers exclusive jurisdiction for review of removal orders, including reinstatement orders, to the federal courts of appeal,[3] 8 U.S.C. § 1252(a)(2)(C) bars this review for criminal aliens.[4] For criminal aliens, habeas petitions are the only way to apply for relief from removal orders.[5] Therefore, Petitioner's application to this Court under 28 U.S.C. § 2241 was proper.

■ The Third Circuit has recently identified the standard of review to be used by district courts when examining the habeas petitions of criminal aliens, finding that there is no jurisdiction under 28 U.S.C. § 2241 to review the discretionary determinations or factual findings of the INS. *Bakhtriger v. Elwood,* 360 F.3d 414, 420 (3d Cir.2004). Rather, "the scope of review under section 2241 must be confined to questions of constitutional and statutory law." *Id.* at 424.[6] Because we examine the application of statutory law to Corona's case, our review is appropriate under *Bakhtriger.*

## III.

Corona's habeas petition, together with the page of unidentified brief, claims: (1) error in the computation of his prison time, namely that during his tenure in state

3. District courts are not authorized to hear § 2241 habeas petitions challenging the reinstated removal orders of noncriminal aliens because direct review is available in the courts of appeal. *See* 8 U.S.C. § 1252; *Castro–Cortez v. INS,* 239 F.3d 1037, 1046 (9th Cir.2001); *see also Duran–Hernandez v. Ashcroft,* 348 F.3d 1158 (10th Cir.2003); *Gomez–Chavez v. Perryman,* 308 F.3d 796 (7th Cir. 2002). "Although habeas jurisdiction remains available to deportees who raise questions of law and who have no other available judicial forum [e.g. criminal aliens] ... [8 U.S.C. § 1252] provides an adequate judicial forum, permitting the noncriminal deportee to file a petition for review in the appropriate court of appeals." *Lopez v. Heinauer,* 332 F.3d 507, 510–11 (8th Cir.2003).

4. 8 U.S.C. § 1252(a)(2)(C) provides that "not withstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offence covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C) or (D) of this title." Corona was originally deported pursuant to 8 U.S.C. § 1227(a)(2)(B)(i).

5. The question of what form of review remained available for criminal aliens following the enactment of 8 U.S.C. § 1231(a)(5) and

§ 1252(a)(2)(C) was answered by the Supreme Court in *INS v. St. Cyr,* in which the Court held that 8 U.S.C. § 1252(a)(2)(C) does not "express a clear and unambiguous statement of Congress' intent to bar 28 U.S.C. § 2241 petitions." *INS v. St. Cyr,* 533 U.S. 289, 290, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Together, 8 U.S.C. § 1252(a)(2)(C) and *St. Cyr* confine review of removal orders of criminal aliens to the district courts under habeas review. *See, e.g., Lawal v. Ashcroft,* 89 Fed.Appx. 774 (3d Cir.2004)(not precedential)(refusing to accept transfer from a district court of a habeas petition in which a criminal alien asserted derivative citizenship and finding the district court properly had jurisdiction over the matter).

6. Similarly, when reviewing the removal orders of noncriminal aliens, the courts of appeal are barred from reviewing the merits of the original deportation order. 8 U.S.C. § 1231(a)(5) limits "review to the reinstatement order itself; [a] court cannot 'reopen or review' the merits of [the original deportation order]." *Ojeda–Terrazas v. Ashcroft,* 290 F.3d 292, 295 (5th Cir.2002); *see also Gomez–Chavez,* 308 F.3d at 801.

custody, his federal sentence should have been running concurrently; (2) that the district court judge who sentenced him unlawfully ordered deportation as a condition of his supervised release; (3) a right to hearing to determine his deportability; and (4) United States citizenship. We consider each of these claims in turn.

*Computation of Prison Time*

■ Corona claims that during his time in state custody, his federal sentence should have been running concurrently. Although his petition on this issue is timely, because Corona was not aware of the sentencing computation problem until he was transferred to federal custody in April of 2003, this issue is now moot. Corona has received the relief he sought; his sentence computation was adjusted and he has been released from federal prison.

*Unlawful Sentence*

■ Corona's next claim, that the district judge who sentenced him unlawfully ordered deportation as a condition of his supervised release, misunderstands the district court's ruling. The Honorable Charles R. Weiner of the Eastern District of Pennsylvania did not order deportation as a condition of supervised release as Corona alleges. Rather, Judge Weiner stipulated that "if deported or granted voluntary departure, the defendant shall remain outside the United States and all

places subject to its jurisdiction, unless prior written permission to reenter is obtained from the pertinent legal authorities and the defendant notifies the probation officer in writing to that effect." In addition, even if Judge Weiner had ordered deportation as a condition of supervised release, a challenge to this order is time barred by 28 U.S.C. § 2255 which provides a one year statute of limitations on habeas petitions for prisoners who challenge the lawfulness of a federal sentence.[7] Judge Weiner issued the above in December 1999 and Corona's habeas was not filed until February 2004.

*Right to Deportation Hearing*

■ Corona next claims that he is entitled to a hearing to determine his deportability. In order to review this claim, it is necessary to determine whether 8 U.S.C. § 1252(b)(5),[8] which reinstates prior removal orders against aliens who illegally reenter the United States, applies to this case.[9] If it does, Corona is precluded from seeking judicial review of this claim.

In 1996, Congress enacted two statutes which changed the landscape of immigration law. The Antiterrorism and Effective Death Penalty Act (ADEPA), Pub.L. No. 104–132, 110 Stat. 1214, and the Illegal Immigrant Reform and Immigrant Responsibility Act (IIRIRA), Pub.L. No. 104–208, Div. C, 110 Stat. 3009, restricted and

---

7. 28 U.S.C. § 2255 allows federal prisoners to collaterally attack a sentence, which they claim "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

8. 8 U.S.C. § 1231(a)(5) provides

If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal,

the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

9. Corona actually filed his habeas petition six days before the reinstatement of his original removal order pursuant to 8 U.S.C. § 1231(a)(5). However, because Corona's habeas petition challenges his deportability in general, we must examine the § 1231(a)(5)'s effect on his claim.

defined judicial review of removal orders. 8 U.S.C. § 1231(a)(5) was a part of this reform.

The magnitude of the changes enacted under ADEPA and IIRIRA raised questions as to whether provisions like 8 U.S.C. § 1231(a)(5), which reinstates original deportation orders against aliens who subsequently illegally re-enter the United States and bars review of those orders, could be applied retroactively to aliens whose initial deportation orders were issued prior to the statute's effective date and who, like Corona, also reentered prior to the statute's effective date. Corona, who was deported on April 10, 1992, illegally reentered the United States later that same year. Declaration of Anna Gbur, Assistant Chief Counsel, Newark Office of United States Immigration & Customs Enforcement, DHS,(hereinafter "Gbur Decl."), Ex. 2. Therefore, this Court must determine whether 8 U.S.C. § 1231(a)(5) may be retroactively applied to his case.

The courts of appeal that have examined this issue have all applied the retroactivity analysis found in *Landgraf v. USI Film Products. Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).[10] The *Landgraf* test has two parts. First, it asks whether Congressional intent as to the possible retroactive application of the law was clear. *Id.*

at 280, 114 S.Ct. 1483. If Congress clearly indicated that the statute may be retroactively applied, the test is satisfied, and the statute may be applied retroactively. On the other hand, if Congress made clear its intent that the statute not be retroactively applied, the *Landgraf* test is likewise satisfied, and the statute may not be applied retroactively.[11]

■ If Congressional intent as to the possible retroactive application of the statute is unclear, the court proceeds to the second step in of the *Landgraf* analysis, evaluating the effect of the statute if applied retroactively.[12] This entails deciding "whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf,* 511 U.S. at 270, 114 S.Ct. 1483. A new law cannot "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280, 114 S.Ct. 1483.

Courts that have performed this analysis have held that 8 U.S.C. § 1231(a)(5) may be applied retroactively where a petitioner "has shown neither a reasonable likelihood of success under pre-IIRIRA law nor a detrimental reliance on pre-IIRIRA law," *Velasquez–Gabriel,* 263 F.3d at 108–09,[13] or where a petitioner had no reasonable expectation, when he illegally reentered

---

10. *See Velasquez–Gabriel v. Crocetti,* 263 F.3d 102, 105 (4th Cir.2001); *Ojeda–Terrazas v. Ashcroft,* 290 F.3d 292, 297 (5th Cir.2002); *Bejjani v. INS,* 271 F.3d 670, 677 (6th Cir. 2001); *Alvarez–Portillo v. Ashcroft,* 280 F.3d 858, 863 (8th Cir.2002); *Castro–Cortez,* 239 F.3d 1037, 1050 (9th Cir.2001).

11. In applying the *Landgraf* test to this issue, the Sixth Circuit and the Ninth Circuit have held that Congress clearly did *not* intend for 8 U.S.C. § 1231(a)(5) to have a retroactive effect. *Bejjani,* 271 F.3d at 684; *Castro–Cortez,* 239 F.3d at 1051–52. Therefore, these courts have not addressed the second step of *Landgraf* analysis, but have held that § 1231(a)(5) may not be retroactively applied against an alien who reentered the United States prior to its effective date.

12. The Fourth Circuit, the Fifth Circuit and the Eighth Circuit have held that Congressional intent as to the possible retroactive application of 8 U.S.C. § 1231(a)(5) is unclear. *Velasquez–Gabriel,* 263 F.3d at 108; *Ojeda–Terrazas,* 290 F.3d at 299; *Alvarez–Portillo,* 280 F.3d at 864–65. These courts have reached the second stage of *Landgraf* analysis, evaluating the effect of the statute if retroactively applied.

13. Although the Forth Circuit used the above stated principle to distinguish Velasquez–Gabriel from petitioners, like those in *St. Cyr,* who relied on the probability that under the previous system they were likely to receive the relief they sought, and therefore against whom the new laws were impermissibly ret-

522

the United States, that pre-IIRIRA laws would govern any hearing brought against him. *Ojeda–Terrazas*, 290 F.3d at 301–02 (finding that although pre-IIRIRA law entitled a petitioner to a hearing before an immigration judge upon reinstatement of his deportation order and under post-IIRIRA law the hearing is held before an immigration official, petitioner "had no reasonable expectation of having a hearing before an immigration judge rather than an INS official when he illegally reentered the United States").[14]

Although the Third Circuit has not yet had the opportunity to address this issue fully,[15] a panel of that Court has indicated that it does not find clear Congressional intent as to the possible retroactive application of 8 U.S.C. § 1231(a)(5). *Avila–Macias v. Ashcroft*, 55 Fed.Appx. 93, 98 (3d Cir.2003)(not precedential) ("What is clear is that Congress' intent with regard to the temporal reach of section 305(a)(5) of IIRIRA [8 U.S.C. § 1231(a)(5)] is *not*

clear"). We agree with the reasoning in *Avila–Macias* and predict that the Third Circuit will join the Fourth, Fifth and Eighth Circuits [16] in analyzing whether 8 U.S.C. § 1231(a)(5) can be applied retroactively.

We begin our evaluation of Corona's claim of a right to a deportation hearing using the second stage of *Landgraf* analysis, which entails deciding "whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483. If the law "impair[s] rights a party possessed when he acted, increase[s] a party's liability for past conduct, or impose[s] new duties with respect to transactions already completed," *Id.* at 280, 114 S.Ct. 1483, it may not be applied retroactively.

Although some courts have made much of the differences between pre-IIRIRA and post-IIRIRA reinstatement proceedings,[17] in reality the substantive analysis

roactive, the Court's final determination was bolstered by the fact that Velasquez–Gabriel failed to apply for readjustment of his status before U.S.C. § 1231(a)(5) took effect. *Velasquez–Gabriel*, 263 F.3d at 108–10.

14. The only other court to reach the second step of the *Landgraf* analysis on this issue is the Eighth Circuit, which has held that "new procedures may be applied to expedite all reinstatement proceedings commenced after the enactment of [8 U.S.C. § 1231(a)(5)], but the substantive defenses to removal eliminated by [8 U.S.C. § 1231(a)(5)] may not be retroactively denied to aliens who illegally reentered prior to the enactment." *Alvarez–Portillo*, 280 F.3d at 861. The court cites *St. Cyr* for the proposition that "a retroactive effect is impermissible even if its only impact is on relief that was discretionary under prior immigration laws," and found an impermissibly retroactive application of 8 U.S.C. § 1231(a)(5) when under the previous immigration law scheme, following marriage to a U.S. citizen, illegal aliens applying for an adjustment of status had a reasonable expectation that it would be granted, whereas such

relief is now no longer available. *Id.* at 867. Given his status as a criminal alien, it is unlikely Corona would have been eligible for, or had an expectation of receiving, discretionary relief under the pre-IIRIRA system.

15. The plaintiff in *Avila–Macias* reentered the United States following the enactment of § 1231(a)(5). The courts of appeal have held that 1231(a)(5) can be applied to aliens who were deported prior to IIRIRA's enactment, but who illegally reentered after 1996. *See, e.g., Lopez v. Heinauer*, 332 F.3d 507, 512 (8th Cir.2003).

16. *See Velasquez–Gabriel*, 263 F.3d at 108–09; *Ojeda–Terrazas*, 290 F.3d at 301–02; *Alvarez–Portillo*, 280 F.3d at 861.

17. According to the Sixth Circuit, 8 U.S.C. § 1231(a)(5) "expands the types of orders subject to reinstatement, provides that the prior order of removal is not subject to being reopened or reviewed, and bars aliens from applying for any form of relief, other than a claim for asylum." *Bejjani*, 271 F.3d at 675.

which would accompany the reinstatement of Corona's deportation order under pre-IIRIRA and post-IIRIRA law is nearly identical. Under the pre-IIRIRA reinstatement provision (8 U.S.C. § 1252(f)(repealed)), an Immigration Judge could only consider certain issues when reinstating a previous order of removal;

> the issues shall be limited solely to a determination of the identity of the respondent, i.e., whether the respondent is in fact an alien who was previously deported, or who deported while an order of deportation was outstanding; [or was deported under other listed provisions], and whether respondent has unlawfully reentered the United States. 8 C.F.R. § 242.23 (1996).

Under the current provision, 8 C.F.R. § 241.8 (2004), an immigration officer determines: (1) if the alien "has been subject to a prior order of removal;" (2) "the identity of the alien, i.e., whether the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal;" and (3) "whether the alien unlawfully reentered the United States." Thus, evaluation of Corona's reinstatement order would be substantively similar under pre-IIRIRA and post-IIRIRA law,[18] although

review is accomplished by different persons.

■ Corona claims a right to a hearing to determine his deportability. However, current law, as embodied in 8 U.S.C. § 1231(a)(5), which reinstates original deportation orders against aliens who subsequently illegally re-enter the United States and bars review of those orders, does not allow review of Corona's original order of removal. Although Corona reentered the United States prior to the enactment of 8 U.S.C. § 1231(a)(5), its application in this case is not impermissibly retroactive. The substantive analysis that would have been performed under pre-IIRIRA law prior to reinstatement of Corona's original removal order is essentially the same as the analysis that was performed prior to the reinstatement of Corona's original removal order under 8 U.S.C. § 1231(a)(5). Therefore, because 8 U.S.C. § 1231(a)(5) does not "attach new legal consequences," *Landgraf,* 511 U.S. at 270, 114 S.Ct. 1483, to Corona's situation, its application to his claim is appropriate.

*Claim of United States Citizenship*

■ In his habeas petition, Corona, who was born in the Dominican Republic, alleges he is a United States citizen by virtue of his father's alleged U.S. citizenship.[19] Be-

---

Under the prior regulations, "an alien in reinstatement had a right to a hearing before an immigration judge, a right to develop a record, and a right to counsel." *Id.* "Under the new regulations, aliens have none of these rights; instead, an immigration officer determines whether reinstatement is appropriate." *Avila–Macias,* 55 Fed.Appx. at 98 (not precedential). While *Avila–Macias* reentered following § 1231(a)(5)'s effective date, the opinion notes, "If he had reentered prior to the effective date of IIRIRA, he could at least plausibly argue that he did so believing (1) that he would be entitled to a hearing at which he could contest the legality of his underlying deportation order and (2) that he would be entitled to apply for discretionary relief." *Id.* at 98–99. Although *Avila–Macias*

seems to indicate it would follow the Sixth Circuit's analysis of the difference between pre-IIRIRA and post-IIRIRA reinstatement proceedings, actual evaluation of the regulations as applied to Corona's claim does not reveal much substantive difference between them.

**18.** The situation might have been different if Corona had applied for asylum or would have fit into one of the categories under which discretionary relief was frequently granted prior to IIRIRA, but Corona has indicated that he has no fear of torture or persecution should he be forced to return to the Dominican Republic. Gbur Decl., Ex. 2.

**19.** 8 U.S.C. § 1401(g) provides United States citizenship at birth for persons born outside

cause this is the first time Corona has raised this issue, it is procedurally barred.

Before petitioning for a writ of habeas corpus pursuant to § 2241, federal prisoners are, under most circumstances, required to exhaust all available administrative remedies. *See* 8 U.S.C. § 1252(d); *Bradshaw v. Carlson,* 682 F.2d 1050, 1052 (3d Cir.1981)(*per curiam* ); *see also Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001) (excusing petitioner's failure to exhaust only if "legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies"). A § 2241 petitioner can only receive judicial review of his claims if "he can show cause for the default and prejudice attributable thereto." *Moscato v. Federal Bureau of Prisons,* 98 F.3d 757, 759 (3d Cir.1996).

At the time of his original deportation, on April 7, 1992, Corona provided a handwritten statement to the Immigration Judge ("IJ") indicating that he did not wish to appeal his deportation. Gbur Decl., Ex. 3. Although the IJ reserved Corona's right to appeal, there is no evidence that he ever attempted to exercise that right. Gbur Decl., Ex. 3.

Following his illegal reentry into the United States, Corona was prosecuted under 8 U.S.C. § 1326. During that prosecution, Corona could have raised a citizenship claim and collaterally attacked the original deportation order if: (1) he had exhausted all available administrative remedies;[20] (2) the deportation proceedings at which the order was issued "improperly deprived [him] of the opportunity for judicial review;" and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). There is no evidence that Corona ever attempted to raise a citizenship claim during the § 1326 proceedings. In fact, Corona pled guilty to the charges. Gbur Decl., Ex. 4. Finally, on February 20, 2004, when Corona was presented with a Notice of Intent/Decision to Reinstate Prior Order, he indicated that he "[did] not wish to make a statement contesting this determination." Gbur Decl., Ex. 5.

As outlined above, Corona has had several opportunities in which to assert his claim of United States citizenship, but he has consistently failed to do so. Because he has failed to utilize available administrative remedies, he is now barred from raising this issue in a habeas petition.[21]

---

the United States where one parent is a United States citizen who "prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen (14) years."

**20.** The Ninth Circuit has held that a defendant who waived his right to appeal at the time of the original deportation is precluded from collaterally challenging the order in a 8 U.S.C. § 1326 prosecution, providing such waiver was "considered and intelligent." *U.S. v. Garza–Sanchez,* 217 F.3d 806, 808 (9th Cir.2000)(citing *United States v. Mendoza–Lopez,* 481 U.S. 828, 840, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)).

**21.** In *Batista v. Ashcroft,* the First Circuit heard the citizenship claim of a criminal alien

who had not utilized all avenues of available appeal, including failing to appeal an IJ's order of removal and failing to contest reinstatement of that order following his illegal reentry. However, *Batista* is distinguishable from the case before us because *Batista* raised the issue of citizenship during his initial removal hearing by filing a motion to terminate the removal proceedings on the grounds that he was a United States citizen. *Batista v. Ashcroft,* 270 F.3d 8, 10–12 (1st Cir.2001). Corona raises his claim of citizenship for the first time in his habeas petition. *Batista* also presented documentary evidence purporting to support his claim of citizenship. *Id.* As noted above, Corona has presented no evidence or explanation beyond his simple claim of citizenship.

Corona has neither shown cause for his default nor resulting prejudice, and, therefore, we may not review his citizenship claim at this time. *See Moscato,* 98 F.3d at 759 (holding that judicial review is only available to § 2241 petitioners who have failed to use available administrative remedies if they can show "cause for the default and prejudice attributable thereto"). Specifically, Corona has failed to explain why he did not raise this citizenship claim in his original deportation proceeding. He has also presented no evidence of his father's citizenship beyond a bare allegation, so that nothing leads us to believe he would be able to demonstrate prejudice even if he could make a showing of cause.[22] Because Corona is procedurally barred from raising this issue at this time, a *Landgraf* analysis of § 1231(a)(5)'s effect on this claim is unnecessary.[23]

## IV.

Petitioner claims: (1) error in the computation of his prison time, namely that during his tenure in state custody, his federal sentence should have been running concurrently; (2) that the district court judge who sentenced him unlawfully ordered deportation as a condition of his supervised release; (3) a right to hearing to determine his deportability; and (4) United States citizenship. His claim with regards to the computation of his prison time is now moot and his claim regarding the conditions of his release is time barred. Because 8 U.S.C. § 1231(a)(5) may be retroactively applied to Corona's case, judicial review of his deportability is properly denied. Finally, in light of his previous opportunities in which to assert a claim of United States citizenship and his failure at every turn to do so, Petitioner is procedurally barred from asserting this claim.

For the reasons set forth above, Petitioner's application for habeas corpus relief under 28 U.S.C. § 2241 is denied. The Court will issue the appropriate order.

## ORDER DENYING PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS AND VACATING THE COURT'S MARCH 23, 2004 ORDER STAYING PETITIONER'S DEPORTATION

Currently before the Court is Petitioner's application for writ of habeas corpus

22. In addition to presenting no evidence regarding his father's alleged citizenship, Corona also fails to present evidence to show that his father was physically present in the United States or one of its outlying possessions as required by 8 U.S.C. § 1401(g). Without such proof, Corona would be unable to establish United States citizenship even if his father was a U.S. citizen. *See supra* note 18.

23. The Court does note, however, that under current law, the courts of appeal have jurisdiction to review the citizenship claims of noncriminal aliens when such claims are raised in removal proceedings. 8 U.S.C. § 1252(b)(5). While 8 U.S.C. § 1252(a)(2)(C) prohibits the courts of appeal from reviewing the removal orders of criminal aliens, it does not prohibit them from determining that petitioner is (1) an alien who has (2)committed an offense for which he is removable. *See Barthelemy v. Ashcroft,* 329 F.3d 1062, 1064 (9th

Cir.2003); *see also Bowrin v. INS,* 194 F.3d 483, 486 (4th Cir.1999)(finding that the "jurisdiction-limiting" provision [8 U.S.C. § 1252(a)(2)(C)] is "triggered only when the requisite jurisdictional facts are present; the petitioner must be (1) an alien, (2) who has been convicted of one or the statutorily enumerated offenses requiring deportability"). Under pre-IIRIRA law, Corona would have been precluded from raising the citizenship issue in conjunction with a removal proceeding. 8 U.S.C. § 1503(a)(1996) provides that aliens claiming citizenship can mount a declaratory action "except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding."

pursuant to 28 U.S.C. § 2241. The Court having considered the submissions of the parties, and for the reasons set forth in an Opinion issued on even date herewith, and for good cause appearing,

**ORDERED THAT:**

(1) Petitioner's application for writ of habeas corpus pursuant to 28 U.S.C. § 2241 is **DENIED**; and

(2) The Order staying Petitioner's deportation, dated March 23, 2004, is hereby **VACATED** effective July 30, 2004.