

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-13-2009

# Hermawan v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4230

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Hermawan v. Atty Gen USA" (2009). *2009 Decisions.* Paper 2047.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2047

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4230
_____

TAUFAN HERMAWAN; NEVIE ARSANTY,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A97-149-825 & A97-149-826)
Immigration Judge: Honorable Rosalind K. Malloy

_____

Submitted under Third Circuit LAR 34.1(a)
September 18, 2008

Before: MCKEE, NYGAARD and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 13, 2009)

_____

O P I N I O N

_____

**PER CURIAM**:

Taufan Hermawan and Nevie Arsanty, husband and wife, are natives and citizens of Indonesia. They arrived in the United States as visitors for pleasure in 2001. In 2003, the Government charged them with removability because they had overstayed their visas. On April 7, 2003, Hermawan filed an application for asylum, withholding, and relief under the Convention Against Torture ("CAT") for himself and his wife based on their experiences as ethnically Chinese Christians (he is described as a "charismatic Christian" or evangelical Christian; she is described as Catholic or evangelical).[1]

The IJ rejected the asylum claims as untimely over Hermawan's claim of problems filing the application because of Post-Traumatic Stress Disorder ("PTSD"), his headaches, his wife's difficult pregnancy with their first child, and an illness of the first of the couple's two United-States-citizen children. The IJ also rejected Hermawan's argument of changed country conditions based on the Bali bombings. The IJ also stated that she would have rejected the asylum application on the merits if the application had been timely filed.

The IJ also denied the withholding and CAT claims. She described Hermawan's claims of mistreatment as a child by other children as discrimination, not persecution. She addressed his problems with his neighbor, a former brigadier general, but concluded that the conflict over the clean-up of his neighbor's home remodeling project and his neighbor's

---

[1]Because the joint asylum application was untimely filed, Arsanty later separately filed an application. However, the Immigration Judge ("IJ") considered April 7, 2003, as the filing date for both petitioners.

threats and poisoning of Hermawan's dogs did not amount to persecution. The IJ acknowledged the attack in which Hermawan was pulled from his car and beaten while his wife watched, but the IJ concluded that there was no evidence that the attack was related to the problems with the former general. The IJ also concluded that a bombing in the parking lot of the Catholic church that Arsany attended did not amount to persecution. Noting the 1998 riots, but also describing improvement in Indonesia since then, the IJ also held that the petitioners had not shown a pattern or practice of persecution against ethnically Chinese Christians in Indonesia.

Hermawan and Arsanty appealed to the BIA. The BIA adopted and affirmed the IJ's decision, rejecting the couple's arguments that the IJ applied the wrong standard and came to conclusions unsupported by the record. The BIA also rejected their claim that the IJ violated their right to due process when she considered the Assessment to Refer even though the Government had refused to turn it over to them before their hearing. Hermawan and Arsanty, through counsel, present a petition for review.

We have jurisdiction to review constitutional claims and questions of law but not factual or discretionary determinations concerning the timeliness of an asylum application. See 8 U.S.C. § 1158(a)(3); Sukwanputra v. Gonzales, 434 F.3d 627 (3d Cir. 2006). Essentially, we are limited in our review of the timeliness of the asylum application to the due process issue Hermawan and Arsanty raise. Our review of the BIA and IJ's decisions, see Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004), is otherwise limited to the issues

relating to the denial of withholding of removal.[2]  We review questions of law de novo. See Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir. 2001).  We review factual findings for substantial evidence.  See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005).

The due process claim is based on the Government's refusal to turn over the Assessment to Refer in response to a Freedom of Information Act request.  (The Government turned over a completely redacted document without giving a clear reason for the redaction.) Hermawan and Arsanty contend that the IJ improperly allowed the Assessment to Refer to be admitted into evidence and used in cross-examination and as direct evidence.  They also claim that she improperly relied on the document in making her decision.  In addition, they argue that the BIA compounded the error when it adopted the IJ's decision.

Aliens facing removal are afforded due process protections, including rules governing the admission of evidence in removal proceedings.  See Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003).  The Federal Rules of Evidence do not apply, but evidence must be probative and used in a fundamentally fair manner.  See id.  The due process analysis turns on whether the evidence considered was reliable and trustworthy.  See id.

The Assessment to Refer (found at pages 304 to 309 of the administrative record) includes the immigration officer's report of his interview with Hermawan, his assessment of Hermawan's claims, and a discussion of country conditions taken from Department of State

---

[2]Hermawan and Arsanty waived their CAT claim by not raising it in their opening brief.  See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005).

reports. Confronted with the assessment at his hearing, Hermawan did not dispute the record of his statements. R. 235-37. The Assessment to Refer is not the "multiple hearsay of the most troubling kind" that was at issue in Ezeagwuna. 325 F.3d at 406. Although we do not approve of the Government's reliance on a document it withheld, the admission of the document into evidence does not seem to have subjected Hermawan or Arsanty to a fundamental unfairness.

In any event, the petitioners cannot show, as they must to prove a due process violation, that they were prejudiced by the procedural irregularity. See, e.g., Avila-Macias v. Ashcroft, 328 F.3d 108, 114-15 (3d Cir. 2003). Hermawan and Arsanty contend that their counsel would have employed a different trial strategy and brought forth different testimony or evidence, including greater evidence of Hermawan's headaches (which he did not mention in the interview with the immigration officer) and different evidence of the country conditions. However, their counsel had access to Hermawan's account of his interview (which did not differ from the summary in the Assessement to Refer) and knew that Hermawan and Arsanty had the burden to prove changed country conditions. Furthermore, except in describing an improving situation for ethnic Chinese citizens of Indonesia since 1998, the IJ did not appear to rely on the Assessment to Refer. The description of the country conditions was consistent with the official State Department reports, information of which the IJ could take notice. See Zubeda v. Ashcroft, 333 F.3d 463, 479 (3d Cir. 2003).

5

For these reasons, Hermawan and Arsanty are not entitled to relief based on their due process claim, either in how it relates to the timeliness of their asylum petition or otherwise. Nor is there merit in the petitioners' claim of persecution.

The mistreatment Hermawan suffered as a child amounts to discrimination, not persecution. See Chen v. Ashcroft, 381 F.3d 221, 233 n.20 (3d Cir. 2004) (noting that courts routinely deny immigration relief to persons "who suffer racial discrimination that falls short of 'persecution'"). Though the couple were in Indonesia during the 1998 riots, they did not suffer direct harm. Evidence in the record supports the conclusion that the attack on Hermawan, while serious and certainly frightening, was an isolated criminal act that does not rise to the level of persecution. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (holding that "two isolated criminal acts, perpetrated by unknown assailants, . . . [are] not sufficiently severe to be considered persecution"). Similarly, a bombing outside Arsanty's church, which did not cause injury to Arsanty or damage to the church building, is not enough to show persecution.

Furthermore, substantial evidence supports the conclusion that the attack on Hermawan was not tied by any strong evidence to the influence of Hermawan's neighbor, the ex-general (although the attack followed the dispute with the neighbor, and Hermawan noted that he was not robbed and the attackers warned him not to complain). The dispute with the ex-general did not seem to stem from the ex-general's antipathy toward ethnic Chinese Indonesians or Chinese Christians, even though the ex-general called Hermawan

6

"stupid Chinese," asked him if he wanted to die, and poisoned Hermawan's dogs. Hermawan and his family lived peacefully next to the ex-general for many years. It was only when the ex-general built an addition that problems started. Construction trash and debris went into Hermawan's yard and pool; Hermawan reported the ex-general to the police; the ex-general retaliated with threats and animal poisoning. The situation is better described as a markedly unsavory conflict between neighbors than persecution. (Hermawan's family members, who did not experience the same problems with the ex-general, have since moved. They live near the ex-general's relative without incident.)

Also, the record does not show that the violence against ethnic Chinese Christians in Indonesia is the result of government action or acquiescence, or that it constitutes a pattern or practice of persecution. Cf. Wong v. Attorney Gen. of the United States, ____ F.3d ____, No. 06-3539, 2008 U.S. App. LEXIS 17720 (3d Cir. Aug. 20, 2008); Lie, 396 F.3d at 537-38; Sukwanputra v. Gonzales, 434 F.3d 627, 637 n.10 (3d Cir. 2006).

In sum, Hermawan and Arsanty did not show a well-founded fear of persecution on the basis of a protected ground on return to Indonesia, as the IJ concluded, or the clear probability that they would be persecuted such that they would be entitled to withholding of removal. Accordingly, we will deny the petition for review.